[Crim. No. 17166. Fourth Dist., Div. Three. Mar. 29, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDALL LYNN BESS, Defendant and Appellant.

[Crim. No. 17428. Fourth Dist., Div. Three. Mar. 29, 1984.]

In re RANDALL LYNN BESS on Habeas Corpus.

**COUNSEL**

Cohen, Stokke & Davis and Dennis LaBarbera for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Keith I. Motley and Robert B. Shaw, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SONENSHINE, J.—In this appeal and consolidated habeas corpus proceeding by Randall Lynn Bess relative to his conviction for armed robbery (Pen. Code, §§ 211, 12022.5), we are asked to resolve three issues. Was it ineffective assistance of counsel to: fail to pursue discovery, bring out Bess' invocation of *Miranda,* and fail to interview eyewitnesses to the robbery.

At trial, Bess was represented by retained counsel. Bess was identified as entering the Capistrano National Bank and obtaining cash at gunpoint. Included in the money were marked bills (bait money). A teller described the assailant as bearded and stocky. He was dressed in faded blue jeans and a blue shirt. A ski mask covered his face. A bystander outside the bank testified he saw the robber enter and leave the bank and followed him to a van. His description matched the one provided by the teller.

Deputy Sheriff Kent soon spotted the van and pulled it over. Bess, the only occupant, was arrested and the van was impounded. The teller was brought to the scene. She told police Bess was *not* the robber, based upon his not having the robber's distinctive, multicolored beard, and because Bess' beard was not as full as the robber's. A search of the van, however, disclosed a large amount of cash secreted in a golf bag and a gun in a box. The cash included the bait money and the gun matched descriptions given by the two witnesses.

At trial the teller again failed to identify Bess. The bystander testified that when arrested, Bess was not wearing the same shirt the robber wore. The record is silent as to whether the blue shirt and ski mask were ever found. Bank photos of the robbery showing the robber and gun were also admitted.[1]

Bess and numerous character witnesses testified. Bess denied committing the robbery. He described a practice of dumping debris from his gardening business in a trash bin next to the bank, and at the same time searching for "sellable" trash. On the day of his arrest he found the cash in the bin, ran

---

[1]Trial counsel never caught the fact the bank photos show the robber not having a ring, while Bess was wearing a ring when arrested.

to his van fearing someone would see him, and placed the money in his golf bag along with the rest of his savings.[2] Bess testified to keeping a gun in the van to prevent his children from finding it at home and hurting themselves.

Following his conviction, Bess retained new counsel who sought a new trial alleging ineffective assistance of counsel.[3] (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) Affidavits were admitted which revealed witnesses identified in police reports, but not called at trial: described the gun as black, while Bess' gun is blue steel; saw the robber's eyes as blue, while Bess' eyes are green; and impeached the bystander's version he followed Bess to his van. In addition, evidence was admitted establishing a second bank camera existed, but the film of the robbery was destroyed by the F.B.I. and a second potential robber had been located in jail (held on bank robbery charges) who matched Bess' description, used a similar modus operandi to the Capistrano National Bank robbery, and possessed a map with a mark close to the location of the Capistrano National Bank at the time of his arrest.

When the defense rested, the prosecution called trial counsel as a witness. He admitted being aware of the identity of the above witnesses, but did not interview them or hire an investigator to interview them. He was unaware of the information contained in the affidavits, including the destroyed photographs, did not determine if a discovery order had been served on the prosecution, and did not subpoena bank records showing Bess had previously maintained an account at the Capistrano National Bank.

Counsel testified the above fit the strategy he intended to employ at trial. Specifically, he chose to rely on cross-examination to impeach the two prosecution eyewitnesses and expose factual inconsistencies. He did not attempt to interview other eyewitnesses feeling he would either drive them to the prosecution or confuse the jury. Thus his preparation for trial consisted of interviewing Bess, reading police reports, representing Bess at the preliminary examination, and expecting Bess to provide corroborative documents.

---

[2]Bess maintained he did not keep his money in banks, although he did have a business account at the Capistrano National Bank three years earlier.

[3]At the time of the motion for new trial it was not clear Penal Code section 1181 would permit a trial court to grant a new trial based upon ineffective assistance of counsel. *People* v. *Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 659 P.2d 1144] approved this procedure.

## I

Bess first asserts failure to properly file and serve the prosecution with a discovery order[4] resulted in ineffective assistance of counsel. ██ We begin with the axiom the burden is on the defense to show ineffective assistance of counsel. Thus the appellant must "show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. In addition, appellant must establish that counsel's acts or omissions resulted in withdrawal of a potentially meritorious defense" (*People* v. *Pope, supra,* 23 Cal.3d 412, 425) or "his counsel failed to perform with reasonable competence and that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings." (*People* v. *Fosselman, supra,* 33 Cal.3d 572, 584.)

██ Bess argues counsel's failure to obtain formal[5] discovery deprived him of an opportunity to present a *Hitch* motion. *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], provides sanctions when law enforcement destroys material evidence. Bess reasons *if* a discovery order had been obtained, the prosecution would have informed counsel of the missing film, and sanctions for its destruction would have been applied. This argument is far too speculative to meet either the *Pope* or *Fosselman* tests.

First, there simply is no requirement counsel obtain a formal discovery order in every case. We recognize a defendant has a *right* to obtain court supervised, formal discovery (*Holman* v. *Superior Court* (1981) 29 Cal.3d 480 [174 Cal.Rptr. 506, 629 P.2d 14], *Funk* v. *Superior Court* (1959) 52 Cal.2d 423 [340 P.2d 593], *Powell* v. *Superior Court* (1957) 48 Cal.2d 704 [312 P.2d 698]), but neither the law nor the facts of this case require this procedure. The focus here is not on what information counsel failed to discover, but rather whether a more favorable result would have obtained in the absence of the error.

Bess fails to point out how a successful *Hitch* motion would have changed the verdict. Since the evidence suggests the film was negligently destroyed, the remedy would have been an instruction informing the jury of its destruc-

---

[4]It appears counsel was unfamiliar with the practice in Orange County Superior Court with regard to the "standard" discovery order. For brevity's sake, we only note attached to each information is a presigned, stipulated discovery order. Counsel merely serves it upon the prosecution and files it with the court. Trial counsel did neither.

[5]Of course, there is informal discovery which merely involves contacting the prosecutor. Similarly, there are constitutional protections requiring prosecution disclosure of exculpatory evidence. (*Brady* v. *Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194]; *In re Ferguson* (1971) 5 Cal.3d 525 [96 Cal.Rptr. 594, 487 P.2d 1234].)

tion. As the prosecution points out, there were numerous photographs admitted at trial which were not subject to the *Hitch* motion. Only speculation suggests the film from the second camera would have been more helpful to the defense than the first.

## II

During direct examination of sheriff's investigator Carlander, the prosecution sought to introduce evidence of an overheard postarrest telephone conversation between Bess and his wife. During voir dire before the jury, counsel asked Carlander if Bess had been advised of his *Miranda* rights and the content of Bess' response. Carlander testified to advising Bess and being told ". . . he did not want to say anything." ■ Bess argues counsel's decision to elicit this clearly inadmissible testimony (*Doyle* v. *Ohio* (1976) 426 U.S. 610 [49 L.Ed.2d 91, 96 S.Ct. 2240]) resulted in ineffective assistance of counsel. While counsel's action may appear unreasonable on its face,[6] "[a]n appellate court's inability to understand why counsel acted as he did cannot be a basis for inferring that he was wrong." (*People* v. *Whittington* (1977) 74 Cal.App.3d 806, 819 [141 Cal.Rptr. 742].)

At Bess' motion for a new trial, trial counsel was questioned extensively on the tactical basis for his other decisions. Appellate counsel never asked what his reason, if any, was for eliciting this testimony. We will not presume error.

## III

Bess' final argument presents a thornier issue. ■ Did trial counsel render ineffective assistance of counsel in failing to interview eyewitnesses to the robbery?[7] ■ *Pope* and *Fosselman* hold where the trial record is silent as to the reasons for particular actions of trial counsel, habeas corpus or a new trial motion is the proper vehicle for determining whether counsel acted as a reasonably competent attorney. A post-trial hearing is where it may be determined whether ". . . counsel's omissions resulted from an informed tactical choice within the range of reasonable competence . . . ." (*People* v. *Pope, supra,* 23 Cal.3d 412, 425.)

The record developed at the new trial motion demonstrates numerous witnesses (1) claim to have observed the robbery in a light which casts doubt

---

[6] One possible explanation was to underscore Bess' expectation the police would not eavesdrop on his telephone conversation, a tactical choice we would not question.

[7] We assume, in the context of this case, interviewing the witnesses could have been accomplished by counsel or an investigator.

upon the prosecution theory and enhances the defense; (2) were willing to be interviewed by the defense; (3) were not interviewed nor called at trial. Assuming in hindsight, their individual or cumulative testimony would have affected the verdict, is trial counsel's professed decision not to interview or call the witnesses a tactic within the range of reasonable competence? We must say no.

■ Although ". . . the choice of which, and how many, of potential witnesses [to call at trial] is precisely the type of choice which should not be subject to review by an appellate court," (*People* v. *Floyd* (1970) 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64]) trial counsel must accept the burden of *investigating* the facts surrounding criminal charges sufficient to make an *informed* decision. While ". . . we cannot presume prejudice from the mere fact of counsel's alleged inaction," (*People* v. *Jackson* (1980) 28 Cal.3d 264, 289 [168 Cal.Rptr. 603, 618 P.2d 149]) reversal is compelled where appellant can demonstrate he was denied an adjudication on potentially meritorious issues due to counsel's inadequate preparation. (*People* v. *Shaw* (1984) 35 Cal.3d 535 [198 Cal.Rptr. 788, 674 P.2d 759].)

*Shaw* involved facts nearly identical to those present here. Shaw was on probation for robbery in addition to being charged with a new robbery of a grocery. At his probation revocation hearing, held prior to trial on the new charges, the preliminary examination record was admitted showing Shaw had been located a few blocks away and identified as the robber. When stopped, Shaw was out of breath and sweating. Two witnesses at the preliminary examination also identified him as the robber.

Although Shaw told counsel he did not commit the robbery, and counsel knew of the existence of information suggesting alibi and mistaken identification, counsel decided not to interview numerous witnesses who supported Shaw's claim of innocence. In reversing the trial court's finding Shaw violated his probation, the Supreme Court held, " '[i]t is sufficient for the present purpose to observe that the defense was *potentially* meritorious, and that petitioner was denied an adjudication on the matter because of his counsel's inadequate factual and legal preparation.' (*In re Hall* (1981) 30 Cal.3d 408, 484 [179 Cal.Rptr. 223, 637 P.2d 690].)" (*People* v. *Shaw, supra,* 35 Cal.3d 535, 541.)

In a similar circumstance, the Supreme Court in *People* v. *Frierson* (1979) 25 Cal.3d 142 [158 Cal.Rptr. 281, 599 P.2d 587], reversed a criminal conviction where counsel failed to obtain a psychological evaluation of his client and did not consult experts believing ". . . in light of the evident 'deliberateness' of the killing, a psychiatrist's testimony might 'repel' the jury, and that the better tactic was to present the defense of drug intoxication

'by means of lay "street" witnesses . . . .'" (*Id.*, at p. 160.) The court concluded, "[b]y failing to make any effort at all to follow the lead afforded by information in his possession counsel precluded himself from making a rational decision on the question . . . ." (*Id.*, at p. 163.)

The conclusion to be reached from *Floyd, Jackson, Shaw* and *Frierson* is clear. ■ Failure to investigate a defense, while not per se ineffective assistance of counsel, still requires the basis for the tactical choice be within reasonable competence. "[E]ven tactical decisions may demonstrate incompetence if made without benefit of 'substantial factual inquiry.'" (*People* v. *Frierson, supra,* 25 Cal.3d 142, 163.) We therefore examine the reasons for Bess' attorney's tactical choice not to investigate.

■ Counsel gave two reasons for not investigating; he feared the witnesses would be driven to the prosecution and would be impeached by previous statements contained in police reports. Neither justification is supported. We can only ask why the prosecution would not, in a weak identification case, call additional witnesses when they were identified in the police reports, unless they were not helpful. Further, why would interviewing witnesses *already* known to the prosecution cause them to go to the prosecution? A decision not to interview witnesses, as opposed to not calling them, is precisely the type of decision made "without benefit of substantial factual inquiry."

The second reason provided has less support than the former. How counsel, prior to trial, could determine the witnesses would be impeached without having first interviewed them, needs no further discussion. In the present context, we must conclude counsel failed to act as a reasonably competent attorney acting as a diligent advocate.

Having determined counsel's assistance does not meet the first test of *Pope,* we now must consider whether such actions withdrew a potentially meritorious defense or if it is reasonably probable a result more favorable would have been reached in its absence. The defense was misidentification. In its support, counsel effectively cross-examined the two witnesses produced by the prosecution and argued a reasonable doubt existed as to the accuracy of their identifications. Clearly the stumbling block to the defense was the discovery of the money and gun in Bess' van. It is for that reason the failure to investigate was critical.

One witness interviewed by appellate counsel's investigator, an individual who claims to have been with the bystander at the time of the robbery, disputes the testimony the robber left the bank and was followed without interruption to Bess' van. If it is true the robber was not continuously in

view, Bess' version he found the money in a trash bin becomes more credible. When considered in light of the additional information discovered by appellate counsel; the ring discrepancy, eye color, gun color, and a similar looking bank robber with connections to the vicinity of the Capistrano National Bank, we must conclude a more favorable result would have been reached had counsel acted in a reasonably competent manner. The jury was in effect prevented from considering Bess' *potentially* meritorious defense.

It may be true an able attorney can pick up police reports, interview his client, take a moment to reflect and competently try a serious felony. But where counsel is on notice potential exculpatory evidence exists, a decision not to investigate cannot be countenanced.

The judgment is reversed. The petition for writ of habeas corpus is dismissed.

Trotter, P. J., and Wallin, J., concurred.

A petition for a rehearing was denied April 16, 1984.