[No. A026594. First Dist., Div. Five. Nov. 26, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
BENNIE LEWIS JACKSON, Defendant and Appellant.

502

---

**COUNSEL**

Harry Gruber and Gruber & Dawson for Defendant and Appellant.

John K. Van de Kamp, Attorney General, David D. Salmon and John W. Runde, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**KING, J.**—In this multi-issue appeal we hold, among other things, that (1) trial counsel was incompetent in failing to move for exclusion of prior felony convictions for impeachment purposes, requiring a limited remand on the issue of prejudice from the incompetence; (2) counsel was arguably incompetent in failing to take steps to facilitate impeachment of a defense witness, but any error was harmless; and (3) the trial court failed to exercise its discretion to impose or strike two 5-year enhancements for prior serious felony convictions.

Bennie Lewis Jackson appeals from a judgment of conviction for burglary and attempted robbery. We reverse and remand for further proceedings on the issue of attorney incompetence and for resentencing.

On the morning of August 5, 1983, a man burglarized a motel room where Robin and Carol Sherlock temporarily resided with their stepfather. Carol was in the room when the intruder entered. He displayed a kitchen knife and demanded money from her, and then attempted to tie her hands, placing the knife on a bed while he did so. At that point Robin entered the room. Carol grabbed the knife and screamed; Robin ran out of the room, also screaming. The intruder tried unsuccessfully to wrestle the knife from Carol. He then fled the room, ran outside to a parked car, and drove off.

Robin had sought help outside from Richard Cerecerez and another man. The intruder passed the three on his way to his car. At trial Robin and Cerecerez identified Jackson as the intruder.

As the perpetrator drove off, Cerecerez memorized the car's license plate number. The police subsequently determined that the car was registered to

Jackson's wife. Shortly after noon the police arrested Jackson in front of his residence. Jackson told an officer that no one other than him had driven the car that morning. Later that afternoon the officer showed the perpetrator's knife to Doris Horad, who lived with Jackson and his wife; Horad said the knife was similar to one that belonged to Jackson's wife but was missing from the kitchen.

At the outset of trial Jackson admitted a prior prison term (Pen. Code, § 667.5, subd. (b)) and two sets of prior serious felony convictions (Pen. Code, § 667), one set consisting of four felonies and the other set consisting of 18 felonies. At trial Jackson presented an alibi defense. The jury convicted him of burglary (Pen. Code, § 459) and attempted robbery (Pen. Code, §§ 211, 664) with personal use of a knife (Pen. Code, § 12022, subd. (b).)

Jackson, who had been represented by retained counsel, subsequently retained a different attorney and moved for a new trial based on ineffective assistance of counsel. (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 582-583 [189 Cal.Rptr. 855, 659 P.2d 1144].) After an evidentiary hearing at which Jackson's first attorney testified at length, the court denied the motion and imposed sentence. The court sentenced Jackson to eighteen years' imprisonment, consisting of the upper term of six years for the burglary, a one-year enhancement for use of the knife in the burglary, another one-year enhancement for the prior prison term, and two 5-year enhancements for the two sets of prior serious felony convictions (plus stayed terms for the attempted robbery with use of the knife).

## I. Incompetence of Trial Counsel

A. *Failure to make suppression motion based on warrantless arrest.*

In his new trial motion Jackson made five separate claims of incompetence of counsel (*People* v. *Fosselman, supra,* 33 Cal.3d 572; *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]), which he renews on appeal. The first is that counsel was incompetent in failing to move to suppress the post-arrest statements by Jackson and Doris Horad (Pen. Code, § 1538.5) based on the failure of the police to obtain a warrant for Jackson's arrest. Jackson relies on the rule set forth in *People* v. *Ramey* (1976) 16 Cal.3d 263, 276-277 [127 Cal.Rptr. 629, 545 P.2d 1333], that warrantless arrests within the home are per se unreasonable in the absence of exigent circumstances.

Jackson has not shown that "trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates."

(*People* v. *Pope, supra,* 23 Cal.3d at p. 425.) The police report indicated Jackson was arrested *outside* his home after being asked out by the police. **(2)** Under such circumstances an arrest is lawful. (*People* v. *Green* (1983) 146 Cal.App.3d 369, 377 [194 Cal.Rptr. 128]; *People* v. *Tillery* (1979) 99 Cal.App.3d 975, 979-980 [160 Cal.Rptr. 650].)

 Jackson testified at the hearing on the new trial motion that he told trial counsel an officer had displayed a gun and told him to step out of the house.[1] But because the court denied the motion, it must be presumed the court disbelieved Jackson's claim that he related these facts to counsel. Under the facts as impliedly determined by the court, there was no cause for competent counsel to make a suppression motion based on *Ramey,* because the police report indicated Jackson's arrest was lawful under existing authority.

Even if Jackson had related his claimed version of the arrest to counsel, it seems a competent attorney still might have seen no *Ramey* issue. Two Court of Appeal justices discerned no *Ramey* problem under even more compelling circumstances in *People* v. *Trudell* (1985) 173 Cal.App.3d 1221, 1228-1231 [219 Cal.Rptr. 679], in which an officer, accompanied by other officers with weapons drawn, used a loudspeaker to order the defendant to leave his house and keep his hands in plain view.[2]

B. *Failure to move for exclusion of priors for impeachment purposes.*

 Jackson next asserts trial counsel was incompetent in failing to move for an order precluding the prosecutor from impeaching him with his prior felony convictions should he testify.

The trial occurred prior to *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], which held that under Proposition 8 a trial court retains discretion to preclude a prosecutor from impeaching witnesses with prior felony convictions involving moral turpitude. At the outset of trial the court informed counsel that Jackson's priors could not be brought to the jury's attention except to impeach Jackson should he testify. Because the judge did not state clearly on the record that he was permitting such impeachment in the exercise of his discretion, it must be presumed

---

[1]Counsel testified he did not recall whether Jackson ever told him this.

[2]Moreover, even if there had been a valid *Ramey* issue, Jackson did not carry his burden of proving prejudice as to Doris Horad's statement (*People* v. *Fosselman, supra,* 33 Cal.3d at p. 584) by showing it would not have been subject to inevitable discovery. (See *Nix* v. *Williams* (1984) 467 U.S. 431 [81 L.Ed.2d 377, 104 S.Ct. 2501]; *People* v. *Superior Court (Tunch)* (1978) 80 Cal.App.3d 665 [145 Cal.Rptr. 795].)

the judge erroneously believed he was compelled under Proposition 8 to permit impeachment. (*People* v. *Collins* (1986) 42 Cal.3d 378, 389, fn. 9 [228 Cal.Rptr. 899, 722 P.2d 173].) But because defense counsel never actually made a motion to preclude such impeachment, the presumed *Castro* error is not cognizable on appeal. (See *id.*, at p. 389.) ▮ Thus the impeachment issue arises within the context of attorney incompetence.

The threshold question is whether counsel was incompetent in failing to make the motion. The answer must be yes. Given the strength of pre-Proposition 8 law favoring exclusion of priors for impeachment, and the extremely unsettled state of the law during the period between the passage of Proposition 8 and the decision in *Castro*, a reasonably competent attorney acting as a diligent advocate would have moved to preclude impeachment with the priors.

The Attorney General asserts the court settled the impeachment issue at the outset of trial and thus a formal motion would have been futile. Competent counsel, however, would have at least taken steps to preserve the point for appeal pending clarification of the law by the appellate courts.[3]

The next question is whether counsel's incompetence in failing to make the motion resulted in prejudice to Jackson. (*People* v. *Fosselman, supra,* 33 Cal.3d at p. 584.) This issue cannot be determined on the present record. First, the record does not indicate whether the trial court would have exercised its discretion to preclude impeachment had the motion been made. Second, Jackson did not testify, so that it is impossible to speculate what his testimony would have been had there been a successful motion.[4] ▮ (The failure to testify did not preclude a claim of *Castro* error, because trial occurred before the decision in *People* v. *Collins, supra,* 42 Cal.3d at p. 388, which only *prospectively* adopted the rule that denial of the motion is not reviewable if the defendant failed to testify.)

▮ The appropriate approach is to remand the cause for the trial court to determine the issue of prejudice from counsel's incompetence, in a manner similar to the procedure prescribed in *People* v. *Collins, supra,* 42 Cal.3d at pages 393-395, for pre-*Collins* error under *Castro* where the defendant did not testify. We reverse the judgment and remand the cause to allow the trial court to decide the issue of prejudice by first receiving an in camera offer of proof as to what Jackson's testimony would have been, and then determining (1) whether the court would have exercised its discretion to

---

[3]The Attorney General also seems to imply that the impeachment issue was actually raised in unreported proceedings and was determined by the court. If this was the case, then there was direct *Castro* error which is cognizable on appeal.

[4]Trial counsel testified that avoidance of impeachment was "the overriding factor" in the decision whether Jackson should testify.

preclude impeachment in light of the offer of proof, and (2) if so, whether Jackson was prejudiced by the incompetence in light of the offer of proof. If the trial court finds either that it would have permitted impeachment *or* that it would have precluded impeachment but Jackson was not prejudiced, it should reinstate the judgment. If the court determines it would have precluded impeachment *and* the incompetence was prejudicial, it should order a new trial. (*Ibid.*)

C. *Failure to pursue claim of impropriety in pretrial identification procedures.*

Jackson claims trial counsel should have challenged Robin Sherlock's and Richard Cerecerez's in-court identifications by requesting a hearing at which the prosecutor would have had the burden of proving the absence of impropriety in pretrial identification procedures. He asserts competent counsel would have suspected improper conduct of a photo lineup procedure based on two sets of facts. First, Robin and Carol Sherlock had been unable to identify Jackson positively at a "show up" on the day of the offense. Second, in the subsequent photo lineup Carol chose two photographs, one of which depicted Jackson, and "leaned toward" the other photograph; Cerecerez initially chose the photograph favored by Carol but subsequently settled on the photograph of Jackson; and Robin chose Jackson's photograph. Jackson argues these facts would have caused competent counsel to suspect that improper police conduct of the photo lineup procedure caused the identifications of his photograph and tainted the subsequent in-court identifications.

Regardless of the question of attorney competence on this point, Jackson has failed to establish that there was a potentially meritorious defense of misidentification caused by improper police conduct. (*People* v. *Pope, supra,* 23 Cal.3d at p. 425.) Jackson did not present any evidence at the hearing on the new trial motion (through affidavits or testimony) that there might have been improper police conduct of the photo lineup procedure, and he has likewise failed to do so on appeal by way of an accompanying petition for a writ of habeas corpus. (See *id.,* at p. 426.) Thus he has failed to sustain his burden of proving withdrawal of a potentially meritorious defense. (*Id.,* at p. 425.)

This omission distinguishes the present case from the two decisions upon which Jackson relies, *People* v. *Bess* (1984) 153 Cal.App.3d 1053 [200 Cal.Rptr. 773], and *People* v. *Shaw* (1984) 35 Cal.3d 535 [198 Cal.Rptr. 788, 674 P.2d 759]. In *Bess,* on a motion for new trial based on attorney incompetence, the defendant submitted affidavits showing that uncalled witnesses who were identified in police reports had provided information

tending directly to undermine the identification of the defendant as the perpetrator. (*People* v. *Bess, supra,* 153 Cal.App.3d at pp. 1057, 1061-1062.) In *Shaw,* on a combined appeal and petition for writ of habeas corpus, the defendant presented affidavits and testimony before a referee showing facts not presented at trial which tended to corroborate an alibi and mistaken identification defense. (*People* v. *Shaw, supra,* 35 Cal.3d at pp. 539-540, 542.) Jackson, in contrast, presented no evidence below or on appeal tending to show improper police conduct and hence deprivation of a potentially meritorious defense of misidentification.

### D. *Failure to take steps to facilitate impeachment of defense witness.*

 Jackson's most intriguing claim is that counsel was incompetent in that he failed to use an investigator to interview one of his own witnesses, but conducted the interview himself and thus was unable to impeach the witness effectively when the need unexpectedly arose.

The witness, Yolanda Alvarado, was the girlfriend of Richard Cerecerez and lived with him in the motel where the offenses occurred. She had seen the perpetrator run to his car. Before trial, defense counsel tried unsuccessfully to contact her. She did not testify for the prosecution, but she did come to court with Cerecerez on the day he testified, November 3, 1983. At that time defense counsel spoke to her in the back of the courtroom during a recess, while Jackson sat at the counsel's table. Trial counsel testified at the new trial hearing that he had "the distinct impression" Alvarado had told him Jackson was not the man she had seen.

On the next day of trial, November 8, 1983, defense counsel presented testimony by Alvarado. Immediately before she testified he again spoke to her in the back of the courtroom. On direct examination, however, she testified that Jackson *was* the man she had seen. Defense counsel, undoubtedly nonplussed, attempted to challenge the unexpected identification by asking, "Now, you told me a few minutes ago when I talked to you that this looked like the man but it wasn't the man?" ██ ██ ██ ██ ██ Alvarado replied, "I said it looks—it is the same man except for he didn't have glasses that day."[5]

On appeal Jackson does not contend counsel was incompetent in presenting testimony by Alvarado, apparently choosing not to challenge counsel's assertion at the new trial hearing that Alvarado had simply "flipflopped on me." Rather, Jackson argues counsel was incompetent in failing to use an

---

[5]Thus defense counsel did not, as the Attorney General claims, successfully impeach Alvarado with her prior inconsistent statements to him.

investigator to interview Alvarado in anticipation of any need to impeach her testimony. Had counsel used an investigator, he could have readily presented testimony by the investigator impeaching Alvarado with prior inconsistent statements, whereas impeaching testimony by counsel himself (which in fact did not occur) would have presented serious ethical and logistical problems. (See Rules Prof. Conduct, rule 2-111(A)(4).)

Jackson relies on *People* v. *Guerrero* (1975) 47 Cal.App.3d 441 [120 Cal.Rptr. 732], which held that a prosecutor acted improperly in presenting his own testimony to impeach a witness, though no prejudice resulted. In dicta the court urged prosecutors and criminal defense attorneys to "familiarize themselves and their staffs" with American Bar Association standards directing counsel in criminal cases to avoid interviewing prospective witnesses except in the presence of a third person, due to the need to avoid impeaching a witness with the lawyer's own testimony. (47 Cal.App.3d at pp. 448-449 & fn. 9; see 1 ABA Standards for Criminal Justice, stds. 3-3.1, subd. (f), 4-4.3, subd. (d) (2d ed. 1980) pp. 3.37, 4.57.)

Certainly it would be preferable for criminal defense attorneys to have a third party present if the lawyer conducts an interview with a prospective witness, to obtain a written statement from the witness or have an investigator interview the witness, in order to facilitate effective impeachment with prior inconsistent statements should the need arise. (See 1 ABA Standards for Criminal Justice, *supra,* std. 4-4.3, commentary, pp. 4.59-4.60.) This is particularly important whenever counsel perceives or should perceive a reasonable possibility the witness might give inconsistent trial testimony. But beyond this general guideline, whether the failure to take these precautionary measures constitutes incompetence must depend on the facts of each case. The realities of criminal law practice will not always permit such precautionary measures. Factors such as prohibitive expense, limits on support services available, and last-minute exigencies may inevitably force an attorney to interview witnesses personally, without the benefit of safeguards against inconsistent trial testimony.

Here, it is at least arguable that counsel was incompetent. Alvarado did not testify until five days after her first conversation with counsel, affording ample time to take precautionary measures against inconsistent testimony. Alvarado's close relationship with Cerecerez, who identified Jackson as the perpetrator, arguably should have alerted counsel to the possibility of inconsistent testimony. The anticipated testimony by Alvarado was of crucial importance, as she would have been the only eyewitness to state that Jackson was not the perpetrator.

But even assuming counsel was incompetent, Jackson was not prejudiced. Regardless of Alvarado's testimony, the People's case against Jackson was

overwhelming. Not only did Robin Sherlock and Richard Cerecerez positively identify Jackson, but his wife's car was clearly shown to have been used by the perpetrator, and he himself told a police officer that no one but him had used the car that day. There is simply no innocent explanation for the perpetrator's use of the car. In any event the prosecutor's closing argument did not rely heavily on Alvarado's testimony. Regardless of whether counsel was incompetent in failing to take steps to facilitate impeachment of inconsistent testimony by Alvarado, it is not reasonably probable a determination more favorable to Jackson would have resulted had Alvarado been effectively impeached. (See *People* v. *Fosselman, supra,* 33 Cal.3d at p. 584.)[6]

E. *Failure to investigate whether police officer had attempted to dissuade Jackson's alibi witnesses from testifying.*

Jackson's final claim of incompetence is that counsel failed to investigate whether a police officer had attempted to persuade Jackson's alibi witnesses not to testify, resulting in the loss of an opportunity to impeach the officer's trial testimony with evidence of such conduct.

As with the omission to challenge the in-court identifications (see *ante,* pp. 507-508), on this point Jackson has failed to establish an evidentiary basis for reversal based on incompetence. He presented no evidence below that there was improper conduct by the officer with which to impeach his testimony, and has failed to do so on appeal by way of a petition for a writ of habeas corpus. The only evidence on this point consists of counsel's vague testimony at the hearing on the motion for a new trial that he recalled Jackson's wife had said the officer "had suggested to the witnesses that they not testify or something to that effect." In contrast, counsel also testified that through discovery he obtained a written account of the officer's interview with one of the witnesses, and when counsel raised the issue of the officer's conduct with one of the witnesses the witness "made no mention of . . . any kind of threat by the officer."

Thus the evidence showed counsel did investigate the question of the officer's conduct. Moreover, counsel's testimony was not sufficiently specific to show police misconduct which could have been used to impeach the officer's testimony. Jackson has shown neither incompetence nor loss of a potentially meritorious defense. (*People* v. *Pope, supra,* 23 Cal.3d at p. 425.)

---

[6]This harmless error analysis, of course, does not resolve the question, on remand, whether the failure to move for exclusion of priors for impeachment purposes was prejudicial. Determination of that issue requires consideration of Jackson's offer of proof as to what his testimony would have been had he testified. (See *ante,* pp. 506-507.)

## II. Flight Instruction

■ Jackson correctly contends the trial court erred when it gave CALJIC jury instruction number 2.52 on flight after commission of a crime. It is well settled that the flight instruction should not be given when, as here, the identity of the perpetrator is a contested issue. (*People* v. *Malgren* (1983) 139 Cal.App.3d 234, 242 [188 Cal.Rptr. 569]; *People* v. *Moringlane* (1982) 127 Cal.App.3d 811, 821 [179 Cal.Rptr. 726]; *People* v. *Anjell* (1979) 100 Cal.App.3d 189, 199 [160 Cal.Rptr. 669].)

Again, however, as with the Yolanda Alvarado issue (see *ante*, p. 510), the error was harmless. In view of the strength of the People's case—which included eyewitness identifications, proof that Jackson's wife's car was used by the perpetrator, and Jackson's own claim that nobody but him used the car on that day—it is not reasonably probable that a result more favorable to Jackson would have occurred had the flight instruction not been given. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## III. Five-year Enhancements

■ Finally, Jackson correctly contends the cause must be remanded for resentencing as to the five-year enhancements for the two sets of prior serious felony convictions (Pen. Code, § 667), in order to permit the court to exercise its discretion to impose or strike these enhancements. (*People* v. *Fritz* (1985) 40 Cal.3d 227 [219 Cal.Rptr. 460, 707 P.2d 833].) In imposing the enhancements the court said, "Proposition 8 has greatly increased the penalty for recidivism. This is the mandate of the People of the State of California and the Court intends to abide by it, particularly in this case where there are 23 felonies in the defendant's past record." The court's use of the word "mandate" indicates the court erroneously believed it lacked discretion to strike the enhancements, and belies the Attorney General's claim to the contrary. (Cf. *People* v. *Collins, supra,* 42 Cal.3d at p. 389, fn. 9 [228 Cal.Rptr. 899, 722 P.2d 173] (error presumed from denial of motion to preclude impeachment with priors unless court made clear statement that it was exercising its discretion).)[7]

The judgment is reversed and the cause is remanded with directions to the trial court to (1) follow the procedure set forth in section I, subdivision B, of this opinion to determine whether Jackson was prejudiced by trial counsel's failure to move for exclusion of priors for impeachment purposes,

---

[7]The trial court's emphasis on Jackson's lengthy criminal record, however, suggests that the court is not likely to strike the enhancements on remand.

and (2) if the court reinstates the judgment, resentence Jackson and exercise the discretion to impose or strike the five-year enhancements.

Low, P. J., and Haning, J., concurred.

A petition for a rehearing was denied December 11, 1986.