[Crim. No. 23932. Aug. 22, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD N. WEAVER, Defendant and Appellant.

**656**

COUNSEL

Mark P. Schnurle, under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eugene Kaster and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**LUCAS, J.—** In this probation revocation case, we must determine whether the limited exclusionary remedy adopted by us in *People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024], has been impliedly abrogated by the passage of Proposition 8 at the June 1982 Primary Election. Proposition 8 contains a "truth-in-evidence" provision (Cal. Const., art. I, § 28, subd. (d)) which we have recently construed as limiting the courts' power to exclude relevant evidence. (*In re Lance W.* (1985) 37 Cal.3d 873, 888-890 [210 Cal.Rptr. 631, 694 P.2d 744].) We have concluded, however, that *Coleman*'s exclusionary remedy survived Proposition 8 because that remedy falls within the exception to section 28, subdivision (d), which preserves preexisting statutory privileges. (See *Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802, 808-811 [210 Cal.Rptr. 204, 693 P.2d 789].) Accordingly, defendant probationer herein will not be deprived of the protection afforded by *Coleman*'s exclusionary remedy at any future criminal trial, and he cannot attack the revocation of his probation on that basis. As will appear, therefore, we affirm the order revoking his probation.

In 1981, defendant pled guilty to a charge of possessing a sawed-off shotgun. (Pen. Code, § 12020.) Execution of his sentence was suspended and defendant was placed on three years' probation on conditions that he serve nine months in the county jail and that he not possess any dangerous weapons during the period of probation.

On February 3, 1983, the district attorney initiated revocation proceedings against defendant for conduct which also served as the basis for independent criminal charges. At the time of the revocation hearing, defendant had been held to answer on the related criminal charges but had not yet been tried. The trial court denied defendant's motion to continue the revocation hearing until after the trial on the underlying charges.

The prosecution called William Ashley as its first witness at the revocation hearing. Ashley testified that on August 19, 1982, he and a friend were

about to leave their parked car when they noticed two women walking down the sidewalk. They commented to each other that the women were "pretty good-looking." Within a couple of minutes defendant appeared beside the car and accused Ashley of looking at his girlfriend. When Ashley did not respond to defendant's challenge to a fight, defendant pulled out a knife from his waist area and dented the roof of the car with the knife's butt end. Ashley then started the car, but defendant used the knife to puncture a rear tire. Ashley drove off anyway and called the police a few minutes later.

Police Officer Michael Norman testified that he responded to Ashley's call and arrested defendant in a nearby bar. A search of his person revealed a buck knife inside a sheath.

Defendant offered no evidence at the hearing. His counsel stated that in his view the provisions of Proposition 8 would make any evidence presented at the hearing admissible in the subsequent trial on the related charges and would thus "grant discovery to the District Attorney and would impinge upon [defendant's] rights against self-incrimination until the trial in those matters, and it would violate his constitutional rights under the Fifth and Sixth Amendments, and for that reason the defendant, and solely that reason, the defendant would not take the stand at this time and will call no witnesses on his behalf."

The trial court found that defendant violated the conditions of his probation by his possession of a knife during the August 19 incident and it entered a judgment revoking probation.[1] The trial court sentenced defendant to two years in state prison. On appeal defendant contends that the trial court's refusal to continue the revocation hearing until after trial forced him to choose between testifying at the hearing and jeopardizing his privilege against self-incrimination, or remaining silent and surrendering his due process right to present evidence in his own behalf.

Almost 10 years ago, this court sought to remove probationers from the horns of this dilemma by declaring that any testimony of a probationer given at a probation revocation hearing could not be used against him in a subsequent trial on the related criminal charges, except under limited circumstances for purposes of impeachment or rebuttal. (*People* v. *Coleman, supra,* 13 Cal.3d 867.) Without arguing the point, defendant simply asserts

---

[1] Although the prosecution presented evidence of a second alleged offense, the court expressly based its finding only on the August 19 incident. Apparently, only the August 19 incident was the subject of the pending criminal charges.

that the *Coleman* use-immunity rule has been nullified by enactment of Proposition 8, which included the provision that "relevant evidence shall not be excluded in any criminal proceeding" (Cal. Const., art. I, § 28, subd. (d)). He claims that in order to prevent the reemergence of an impermissible conflict in constitutional values, this court must exercise its supervisory powers to grant probationers the right to continue the revocation hearing until after trial on the underlying charges.

■ Before considering the merits of defendant's argument, we must address the Attorney General's contention that Proposition 8 does not apply to this case. The Attorney General relies primarily on *People* v. *Huff* (1983) 148 Cal.App.3d 801 [196 Cal.Rptr. 290]. The facts of the *Huff* case are virtually identical to the present case. Huff was on probation for a crime committed before the effective date of Proposition 8, while the offense which resulted in revocation of his probation occurred after the effective date. Huff refused to testify at his pretrial revocation hearing, claiming that his testimony was no longer protected by *Coleman*'s use immunity. The Court of Appeal held that Huff's rights were adequately protected by the *Coleman* rule, and that Proposition 8 was not applicable to the case since Huff was on probation for a crime committed before enactment of the initiative.

In *People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149], we held that Proposition 8 applied only to prosecutions for crimes committed after June 9, 1982. Although the *Huff* court properly applied the *Smith* rule, it used the wrong crime as the basis for its determination. ■ The court overlooked the fact that the *Coleman* rule operates to exclude probation revocation hearing testimony *at the subsequent trial on the underlying criminal charge*; it has no effect on the admissibility of evidence presented at the revocation hearing itself.

■ The problem with the *Huff* court's reasoning is clearly illustrated by the instant case. According to the court's analysis, *Coleman* immunity would have attached to defendant's testimony at the revocation hearing and would not have been affected by Proposition 8, because defendant was on probation for a crime committed before enactment of the initiative. The court, however, failed to consider the applicability of Proposition 8 to the subsequent trial where the *Coleman* rule would have operated to prevent use of the prior testimony. Since the offense at issue in the subsequent trial occurred after the effective date of Proposition 8, *Smith* would require that the initiative's provisions be applied in that trial. If we assume for the sake

of this discussion that defendant is correct in his assertion that Proposition 8 abrogated *Coleman,* then the immunity recognized by the Court of Appeal at the time of the revocation hearing would have been nullified by the passage of Proposition 8 before it could have operated at the subsequent trial.

We conclude that Proposition 8 is applicable to this case because the crime which led to the revocation of probation and served as the basis for the related criminal charges occurred on August 19, 1982, over a month after the effective date of Proposition 8. We disapprove the holding in *Huff* that in such situations the applicability of Proposition 8 is determined by the date of the crime which led to the original grant of probation.

 We turn now to the merits of defendant's argument. First, we observe that we recently reaffirmed the validity of the *Coleman* rule in a pre-Proposition 8 case, *People* v. *Jasper* (1983) 33 Cal.3d 931 [191 Cal.Rptr. 648, 663 P.2d 206]. No new arguments or authorities have been presented which would induce us to reexamine our conclusion in *Jasper* that *Coleman*'s limited exclusionary remedy affords adequate relief from any dilemma posed by the "constitutional tension" between defendant's right to defend and his right to remain silent. Given the Legislature's broad grant of authority to the trial courts to revoke probation "at any time" following the commission of a new criminal offense (Pen. Code, § 1203.2, subd. (a)), it would be improper for us to adopt a "supervisory" rule which mandates staying such revocation proceedings as a matter of course until trial of the pending criminal charges has occurred.

Does *Coleman* and its limited exclusionary remedy survive Proposition 8? Although article I, section 28, subdivision (d), of the state Constitution, by its terms forbids the exclusion of relevant evidence in any criminal proceeding, the provision further states that "Nothing in this section shall affect any existing statutory rule of evidence relating to privilege . . . ." We have recently held in a juvenile court case that the use immunities derived from *Coleman* fall within the foregoing exception, those immunities being "essential to California's privilege against self-incrimination." (*Ramona R.* v. *Superior Court, supra,* 37 Cal.3d at p. 809.) In other words, *Coleman*'s exclusionary rule may be deemed a "statutory" rule because the self-incrimination statute itself (Evid. Code, § 940) merely adopts existing judicial decisions relating to the privilege. (37 Cal.3d at p. 808.)[2] The People have not attempted to distinguish *Ramona R.,* and its analysis is controlling here.

---

[2] I did not participate in *Ramona R.* and I have several reservations regarding its analysis and ramifications. But the case did settle the narrow question whether *Coleman*'s exclusionary rule reflects a "statutory" rule of privilege for purposes of Proposition 8, and, to that extent, I concur in its conclusion.

Accordingly, we hold that *Coleman* and its limited exclusionary remedy have survived the adoption of Proposition 8. That being so, defendant herein will not be deprived of the benefits of that remedy in any future trial of the pending criminal charges, and he cannot attack the revocation of his probation on that basis.[3]

The order revoking probation is affirmed.

Mosk, J., Kaus, J., and Grodin, J., concurred.

**BIRD, C. J.,** Concurring and Dissenting.—I agree that Proposition 8 applies to this case and that the exclusionary remedy adopted in *People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024] survives that legislation. (Maj. opn., *ante,* at pp. 658-660; *Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802, 808-811 [210 Cal.Rptr. 204, 693 P.2d 789].)

However, the practice of holding a probationer's revocation hearing before the trial on the charge which gives rise to the revocation proceeding violates both the due process guarantee of our state Constitution and the privilege against self-incrimination. (Cal. Const., art. I, §§ 7, subd. (a) & 15.) The probationer's right to present a defense and to testify in his own behalf at the hearing is literally forfeited. The probationer must choose between (1) remaining silent and virtually assuring an adverse finding in the revocation proceeding or (2) exercising his right to defend himself with the result that the prosecution will be given an opportunity to discover any evidence it wishes which relates to the pending charge.

This court should hold that, absent a waiver by the probationer, revocation proceedings must be conducted after disposition of the criminal charge on which the revocation proceeding is based. (See *People* v. *Jasper* (1983) 33 Cal.3d 931, 936-942 [191 Cal.Rptr. 648, 663 P.2d 206] (dis. opn. of Bird, C. J.).)

**BROUSSARD, J.,** Concurring and Dissenting.—I concur in the majority's finding that Proposition 8 is applicable to this case and that the exclusionary

---

[3]Nor can defendant maintain that he remained silent at his revocation hearing by reason of a bona fide concern that Proposition 8 would deprive him of *Coleman*'s protection. In the present case, the district attorney had agreed to stipulate that Proposition 8's provisions would not apply to defendant's case.

rule adopted in *People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024] remains viable. I respectfully dissent, however, from the majority's conclusion that the *Coleman* rule is adequate to protect the rights of probationers facing pretrial revocation proceedings. This court continues to reaffirm the *Coleman* use immunity rule without examining developments since the *Coleman* decision which have eroded the effectiveness. of the rule in achieving its objectives.

Although the *Coleman* court believed its limited exclusionary rule would alleviate the tension in constitutional values created by pretrial revocation hearings, "developments unforeseeable at the time have demonstrated that the *Coleman* rule needs strengthening in order adequately to cope with abuses associated with the scheduling of revocation hearings and fully to protect the probationer's constitutional rights." (*People* v. *Jasper* (1983) 33 Cal.3d 931, 939, fn. omitted [191 Cal.Rptr. 648, 663 P.2d 206] (dis. opn. of Bird, C. J.).) Foremost among these developments is a line of post-*Coleman* decisions by this court which affords a criminal defendant a level of protection from compelled pretrial disclosures and prosecutorial discovery which cannot be maintained by *Coleman* use immunity alone. The Chief Justice succinctly described these cases and discussed their impact on the *Coleman* rule in her *Jasper* dissenting opinion at pages 940 and 941.

"A little more than a year and one-half after *Coleman*, this court considered the practice of compelling an accused in a criminal prosecution to reveal the names of prospective defense witnesses so that potential jurors could be queried about them. In *Allen* v. *Superior Court* (1976) 18 Cal.3d 520 [134 Cal.Rptr. 774, 557 P.2d 65], such a practice was found to violate article I, section 15 of the California Constitution.

"The *Allen* court declared that the California Constitution 'plainly proscribes compelled defense disclosures which "conceivably might lighten the prosecution's burden of proving its case in chief.'" (*Allen* v. *Superior Court, supra,* 18 Cal.3d at p. 525, citation and italics omitted.) The court held that the privilege against self-incrimination prohibits compulsory disclosure from the defense 'regardless of the form which the compulsion takes.' (*Id.,* at p. 526.)

"In *People* v. *Belton* (1979) 23 Cal.3d 516 [153 Cal.Rptr. 195, 591 P.2d 485], the defense was not required to specify the defects in the prosecution's case when making a motion for acquittal at the conclusion of the prosecution's presentation of evidence. '[T]o require a defendant to state specific grounds in support of the motion for acquittal would . . . come perilously

close to compelling a defendant to aid in his own prosecution and would lessen the prosecutor's burden to prove each and every element of the case beyond a reasonable doubt.' (*Id.*, at p. 522, fn. omitted.)

"Two years ago, this court disapproved all trial court attempts to frame prosecutorial discovery orders in criminal proceedings in the absence of legislative authorization. (*People* v. *Collie* (1981) 30 Cal.3d 43 [177 Cal.Rptr. 458, 634 P.2d 534].) In coming to this conclusion, the court was 'not unmindful of the almost insurmountable hurdles likely to thwart any attempts to devise constitutionally permissible discovery rules applicable to defendant or defense material.' (*Id.*, at p. 54.)

"The combined effect of the *Allen, Belton* and *Collie* holdings is to limit severely the ability of the state to obtain an individual's unwilling assistance in convicting him of a crime. The limiting effect of these cases operates whether the prosecution seeks discovery directly from the accused or whether the prosecution seeks to require the accused to specify defects in the prosecution's case. [Fn. omitted.]

" . . . . . . . . . . . . . . . . . . . .

"It is clear that the extent of discovery provided to the state in a pretrial revocation hearing vastly exceeds the scope of discovery at issue in *Allen, Belton* and *Collie*. Not only is the prosecution able to obtain the names of defense witnesses, but the state is given pretrial access to the substance of their testimony as well as the opportunity to cross-examine them. In fact, the pretrial revocation procedure presents the prosecution with an opportunity effectively to depose the accused and his witnesses prior to trial on the underlying charges. If the privilege protects an accused against being compelled to reveal even the names of his witnesses prior to calling them to testify at his trial (*Allen*) and if it shields him against having to specify defects in the prosecution's case at that trial (*Belton*), then surely it must protect an individual from having to present his entire defense at a pretrial inquiry."

In my dissenting opinion in *People* v. *Shaw* (1984) 35 Cal.3d 535, 544-545 [198 Cal.Rptr. 788, 674 P.2d 759], I also commented on the ineffectiveness of the *Coleman* rule in protecting a defendant from unwarranted pretrial disclosures: "Regardless of whether a probationer succeeds or fails in his efforts to oppose revocation, he is effectively required to reveal much of the theory and substance of his defense at such a hearing—either through his own testimony, the testimony of witnesses who appear on his behalf, or

through his attorney's cross-examination of the People's witnesses. [Fn. omitted.] In essence, a procedure in which a revocation hearing invariably precedes trial denies a probationer awaiting trial the same protections under the laws of criminal discovery that are afforded to a defendant who is not a probationer, and hence does not face such a hearing."

The *Jasper* majority dismissed the significance of the post-*Coleman* cases by observing that "a probationer's *voluntary* testimony or defense presented at a probation revocation hearing cannot fairly be characterized as a "compelled disclosure" within the scope of the [*Allen, Belton* and *Collie* decisions]." (*Jasper, supra,* 33 Cal.3d at p. 934, original italics.) The Chief Justice addressed this point as well: "Respondent argues that the probationer is not required to testify or to present evidence at the revocation hearing. Thus, he may choose to remain silent. And if he is concerned about revealing defense theory or strategy in regard to the underlying criminal proceedings that is the 'choice' he must make. But such a 'choice' is in reality no choice at all. (See *Simmons* v. *United States* (1968) 390 U.S. 377, 393-394 [19 L.Ed.2d 1247, 1258-1259, 88 S.Ct. 967].) It virtually guarantees that the allegations against the probationer will be found to be true—even when in fact they are not. Neither the state nor the individual has an interest in such inaccurate factfinding." (*Jasper, supra,* 33 Cal.3d at p. 941, dis. opn. by Bird, C. J.)

The *Coleman* court itself recognized the enormous pressure on a probationer to testify at the revocation hearing. The court observed that a probationer facing the "cruel trilemma of self-incrimination, perjury or contempt" may feel compelled to testify falsely in order to defend against the revocation and at the same time avoid damaging pretrial disclosures: "Although a probationer is not faced with contempt if he remains silent at his revocation hearing, he may well find himself in an analogous predicament. He might, as we have stated, seriously incriminate himself if he exercises his right to be heard, particularly where his testimony would consist of a truthful explanation of mitigating circumstances surrounding the charged probation violation. If he remains silent he not only loses his opportunity to present a conceivably convincing case against revocation but also incurs the risk that notwithstanding the ideals of the Fifth Amendment his silence will be taken as an indication that there are no valid reasons why probation should not be revoked. To avoid the adverse effects of the foregoing alternatives, the probationer may be tempted to testify falsely in a manner which will not damage his defense at a subsequent criminal trial." (*Coleman, supra,* 13 Cal.3d at p. 878.)

Although it is apparent that a probationer's decision to testify at a revocation hearing is not truly voluntary, a majority of this court has remained

unconcerned. The majority opinion in *Jasper* observed that the *Coleman* exclusionary rule "affords ample protection to a probationer who is fearful that the People will make improper use of the evidence elicited at the revocation hearing." (*Jasper, supra,* 33 Cal.3d at pp. 934-935.) In other words, a probationer need not worry about his decision to testify, whether voluntary or otherwise, since the *Coleman* rule will protect him from any adverse use of his disclosures. But this response begs the question. The majority never addressed the key argument that *Coleman* use immunity was no longer adequate to maintain the increased protection from pretrial prosecutorial discovery established in the post-*Coleman* cases. It should now be apparent that an exclusionary rule alone is insufficient to protect the rights of a probationer defending against revocation in a pretrial proceeding.

A second development undermining the effectiveness of the *Coleman* rule is the continued practice, at least in the City and County of San Francisco, of routinely scheduling probation revocation proceedings in advance of the trial on the related criminal charges. In formulating its exclusionary rule, the *Coleman* court appeared to presume that revocation proceedings would normally be held after trial. Chief Justice Bird elaborated on this point in her *Jasper* dissent: "The court noted that its rule left the prosecutor free to continue to press for revocation either before or after trial. (*Id.,* at p. 889.) However, it also pointed out that it would not 'set standards for the exercise of a [trial] court's sound discretion in deciding whether *to permit* probation revocation proceedings to commence in advance of the disposition of related criminal proceedings . . . .' (*Id.,* at p. 897, italics added.) In this context, the court noted that 'the most desirable method of handling the problem of concurrent criminal and probation revocation proceedings may well be for revocation proceedings not even to be initiated until after disposition of the related criminal proceedings.' (*Id.,* at p. 896.)

"Assuming this preference would be followed by trial courts, the *Coleman* court felt it necessary to 'point out . . . that we view it as entirely consistent with the exclusionary rule announced herein and its underlying purposes for a probationer, if desirous of obtaining a speedy resolution of his probation status notwithstanding related criminal liability, to offer to waive the benefit of this exclusionary rule if the court will allow the probation revocation hearing to proceed in advance of disposition of the related criminal liability.' (*Id.,* at p. 897.)" (*Jasper, supra,* at p. 939, fn. 2 (dis. opn. by Bird, C. J.).)

In the years since *Coleman* we have reaffirmed the preference for posttrial revocation proceedings. (*People v. Belleci* (1979) 24 Cal.3d 879, 888, fn. 7 [157 Cal.Rptr. 503, 598 P.2d 473].) Just two years ago in *Jasper* we

expressly noted that this court had "disapproved any routine disregard of *Coleman*'s admonition that 'the most desirable method' of handling revocation hearings may be to await trial of criminal proceedings." (*Jasper, supra,* at p. 935.)

Despite the substantial burden on constitutional values imposed by pretrial revocation proceedings, and despite our repeated admonitions, the San Francisco courts apparently continue to routinely schedule virtually all probation revocation hearings prior to trial.[1] "Such a policy directly contravenes the spirit of our *Coleman* ruling as well as this court's explicit reaffirmation of its preference for posttrial revocation proceedings . . . ." (*Shaw, supra,* 35 Cal.3d at p. 545 (dis. opn. by Broussard, J.).)

With the passage of Proposition 8, we are now confronted with the claim that *Coleman*'s already seriously undermined protections have been abolished completely. The majority simply relies on our decision in *Ramona R.* to hold that *Coleman* use immunity survives Proposition 8. Although I agree with this conclusion, I point out that because a fitness hearing must necessarily occur before trial, we could not in *Ramona R.* avoid the constitutional conflict by reordering the proceedings. Use immunity is the only mechanism available to protect the rights of a minor testifying at a fitness hearing. As we have seen, however, not only is it possible to hold the revocation hearing after trial, we have repeatedly declared that this is "the most desirable method of handling problems of concurrent criminal and probation revocation proceedings." (*Coleman, supra,* 13 Cal.3d at p. 896.)

For the reasons discussed, I believe this court should exercise its supervisory powers to require that, absent good cause or waiver by the defendant, the probation revocation hearing must be held after trial as a matter of course. This action would afford probationers greater protection by pre-

---

[1] As I noted in my *Shaw* dissent, "Only a year after our *Coleman* decision, the Court of Appeal felt compelled to note this 'routine' practice in *People* v. *Sharp* (1976) 58 Cal.App.3d 126, 130 [129 Cal.Rptr. 476], where appellant probationer presented significant statistical evidence to that effect. Moreover, during the referee's hearing in the [*Shaw*] case, several of the most respected criminal defense attorneys in the Bay Area were called to testify. All of them stated that the routine practice of holding revocation proceedings prior to trial continues to this day in San Francisco Superior Court and that motions for continuances are virtually futile. As one might expect, they also expounded on the dilemma which this creates for defense attorneys and their clients. (See e.g., hearing testimony of Ephraim Margolin.) In addition, judges from San Francisco County who testified at the hearing, including the judge who presided in [*Shaw*], acknowledged that motions to continue revocation proceedings until after trial are only 'infrequently granted.' Further, the district attorney who prosecuted Shaw, Alfred Chiantelli, stated unequivocally that, 'The policy is that motions to revoke are held *prior* to time of trial . . . it's practiced regularly in the Municipal Court and Superior Court.' (Italics added.)" (*Shaw, supra,* 35 Cal.3d at pp. 545-546, fn. 3 (dis. opn. by Broussard, J.).)

venting routine pretrial hearings, and by avoiding unwarranted pretrial prosecutorial discovery.

Reynoso, J., concurred.