[No. 44300. Second Dist., Div. Four. July 11, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH CORNELIUS JOHNSON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II, III, IV, VI, VII, VIII.

**COUNSEL**

Quin Denvir and Frank O. Bell, Jr., State Public Defenders, under appointment by the Court of Appeal, Jill Ishida and Michael Tanaka, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Norman H. Sokolow, Edward T. Fogel, Jr., John R. Gorey and Shunji Asari, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

McCLOSKY, J.—A jury found appellant Ralph Cornelius Johnson guilty of attempted murder (Pen. Code, § 664/187; count I), attempted robbery (Pen. Code, § 664/211; count II), burglary (Pen. Code, § 459; count III), and assault with a deadly weapon (Pen. Code, § 245, subd. (a)(2); count IV) and found true the allegations contained in all counts that during commission or attempted commission of the crimes charged appellant used a firearm (Pen. Code, §§ 12022.5 and 1203.06, subdivision (a)(1)) and a principal was armed with a firearm (Pen. Code, § 12022, subd. (a)). Appellant was sentenced to state prison, and he appealed.

In a published opinion filed on May 2, 1984, and modified on May 14, 1984, this court reversed appellant's convictions of attempted murder and assault with a deadly weapon and affirmed his convictions of attempted robbery and burglary. We further remanded the matter for retrial on the attempted murder and assault with a deadly weapon counts and for resentencing.

On July 26, 1984, the California Supreme Court granted respondent Attorney General's petition for hearing. On March 27, 1986, that court ordered the case transferred back to us for reconsideration in light of *People v. Croy* (1985) 41 Cal.3d 1 [221 Cal.Rptr. 592, 710 P.2d 392].

*Croy* pertains solely to that part of our original opinion wherein we held that aiding and abetting instructional error under *People v. Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318], required reversal per se of appellant's attempted murder conviction. (See part V, *infra*.)

### CONTENTIONS

Appellant contends (1) that reversal is required because the trial court abused its discretion in denying his motions to reopen his case and present crucial defense witnesses; (2) that the trial court erred in disallowing the polygraph results into evidence; (3) that the convictions must be reversed because the trial court failed to instruct the jury that they had to unanimously agree on a victim in counts I, II and IV; (4) that the trial court erred by giving CALJIC No. 2.06 as there was no evidence to support that instruction; (5) that he was denied due process of law by the trial court's instruction that appellant would be liable for crimes which were the natural and reasonable consequences of the acts he knowingly aided or encouraged even if he had no knowledge of the perpetrator's wrongful crimes; (6) that the evidence is insufficient to sustain the finding that appellant personally used a gun during the commission of the attempted murder; (7) that the trial

court failed to state reasons for imposing a consecutive sentence; and finally (8) that the trial court improperly imposed two use enhancements for a single act of firearm use. No appeal is taken from the burglary conviction.

## FACTS

At approximately 1:25 a.m. on August 25, 1982, Raymond Gonzales (Gonzales) and Phil Espinoza (Espinoza) were working at the In-N-Out Burger located in the City of Pomona. At that time, which was about one-half hour after the restaurant had been closed to the public, appellant and codefendant Lloyd Farrell (Farrell) entered the premises carrying guns.

Farrell demanded the restaurant's money. Gonzales told Farrell that the money was in a time-locked safe and that there was no way they could get into it. Appellant told Gonzales to break the safe open if necessary.

Farrell and appellant walked Gonzales to the safe at gunpoint. When Gonzales emphasized that it would not do any good for him to try and open the safe because it was time-locked, appellant who was carrying a shotgun repeatedly stated, "Blow him away, he's just stalling" and "Let's just blow him away and get out of here."

Appellant then walked outside. Farrell moved back toward the door which he rested his shoulder on. Something distracted Farrell, and when he turned his head to look outside, his hand holding the gun turned with him. Gonzales ran to the door. When he was halfway there, Farrell turned around and pointed his gun at Gonzales. The latter ran behind the door, pushed on it, and forced Farrell out. The gun went off as Gonzales shoved the door.

Appellant and Farrell ran from the In-N-Out Burger and were arrested by police shortly thereafter.

### I-IV*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### V

█  Appellant was convicted of attempted murder on the theory that he aided and abetted Farrell in the commission of the crime. In accordance with this theory, the trial court instructed the jury by giving them CALJIC

---

*See footnote, *ante,* page 314.

Nos. 3.00 (1979 rev.) and 3.01 (1980 rev.). These instructions define, respectively, principals and aiding and abetting.

CALJIC No. 3.00 (1979 rev.) provides: "The persons concerned in the commission or attempted commission of a crime who are regarded by law as principals in the crime thus committed or attempted and equally guilty thereof include: [¶] . . . . [¶] 2. Those who, with knowledge of the unlawful purpose of the one who does directly and actively commit or attempt to commit the crime, aid and abet in its commission or attempted commission, . . . [¶] . . . . [¶] One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged."

CALJIC No. 3.01 (1980 rev.) in pertinent part, and as given by the trial court, provides: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime."

In *People* v. *Beeman, supra,* 35 Cal.3d 547, our state Supreme Court held that the definition of aiding and abetting in CALJIC No. 3.01, fails to adequately inform the jury of the criminal intent required to convict a criminal accused as an aider and abetter.

The *Beeman* court explained "that the weight of authority and sound law require proof that an aider and abettor act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense. [Citations.] [¶] When the definition of the offense includes the intent to do some act or achieve some consequence beyond the *actus reus* of the crime [citation], the aider and abettor must share the specific intent of the perpetrator. . . . [A]n aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime. [Citations.]" (35 Cal.3d at p. 560, italics in original; see also conc. and dis. opn. of Richardson, J. at p. 563.)

CALJIC No. 3.00, too, is deficient under *Beeman* because it does not accurately embody the criminal intent required. (See *People* v. *Caldwell* (1984) 36 Cal.3d 210, 224 [203 Cal.Rptr. 433, 681 P.2d 274].) *Beeman* expressly states that "[t]he liability of an aider and abettor extends also to the natural and reasonable consequences of the acts he knowingly and *intentionally* aids and encourages." (35 Cal.3d at p. 560; italics added.)

Therefore, CALJIC Nos. 3.00 and 3.01 as given to the jury in this case were erroneous and resulted in a violation of due process under the Fourteenth Amendment since they allowed the jury to find appellant guilty of attempted murder without the necessity of finding that he harbored the requisite criminal intent.

The question remaining for determination, then, is whether the *Beeman* error mandates reversal of appellant's attempted murder (count I) conviction.

In *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826], certiorari denied, *California* v. *Garcia* (1985) 469 U.S. 1229 [84 L.Ed.2d 366, 105 S.Ct. 1229], the California Supreme Court considered the question of what standard of prejudice is applicable when the trial court fails to instruct the jury, in accordance with *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], that proof of intent to kill or to aid a killing is essential to a finding of felony-murder special circumstance under the 1978 death penalty initiative.

The *Garcia* court concluded "that this case is controlled by a line of United States Supreme Court decisions beginning with *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068] and continuing through *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450] and *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969]." It then went on to note that "[a]lthough these decisions involve the constitutionality of state practices relating to presumptions and burdens of proof, they contain language and reasoning which indicate that instructions or omissions which deny a defendant his right to have the jury decide each element of a charged offense are necessarily reversible error." (*People* v. *Garcia, supra,* 36 Cal.3d at p. 550.)

In *Garcia,* the jury had been instructed that in order to find a felony-murder special circumstance, "'it must be proved that the murder was committed while the defendant was an accomplice in the attempted commission of a robbery.'" (36 Cal.3d at p. 551.) The *Garcia* court concluded that this instruction abridged due process because it "necessarily implied that the jury could find the special circumstance true even if defendant did not intend to kill or to aid in a killing, but intended only to participate in an attempted robbery. It removed the issue of intent from the jury as effectively as if the jury had been told expressly that intent was not an issue, or was conclusively presumed against defendant." (*Ibid.*)

The *Garcia* court acknowledged that an element of a special circumstance is not, technically speaking, an element of a crime. It concluded, however,

that a special circumstance is "an essential prerequisite to the imposition of the unique and extreme sanction of death" and that therefore "[i]f failure to instruct on the element of a crime is a denial of federal due process, the same consequence should attend failure to instruct on the element of a special circumstance." (36 Cal.3d at p. 552.)

Noting that a majority of the United States Supreme Court justices would "agree that a jury instruction which does take an issue completely from the jury is reversible per se," the *Garcia* court went on to state that it had "no doubt that they would reach the same conclusion if the error was one of omission—failing to submit the issue of intent to the jury. Both forms of error have the same effect: removing the issue wholly from jury determination, and thus denying defendant the right to jury trial on the element of the charge." (36 Cal.3d at p. 554.)

The *Garcia* court observed that the instructional error in the case before it "completely eliminated the issue of intent to kill from the consideration of the jury" and concluded "that the United States Supreme Court would find the error in the present case reversible per se." (36 Cal.3d at p. 554; fn. omitted.)

The *Garcia* court identified four exceptions to the rule that *Carlos* error requires reversal per se. Reversal, it said, will not be required if the omitted instruction related to a criminal offense for which the defendant was found not guilty and had no relation to the crime for which the defendant was convicted, or if the defendant concedes that he has the requisite intent (36 Cal.3d at pp. 554-555, citing *Connecticut* v. *Johnson* (1983) 460 U.S. 73, 87 [74 L.Ed.2d 823, 834-835, 103 S.Ct. 969] (plurality opinion)). Nor will reversal be required if there is a demonstration based on properly given instructions that the factual query posed by the omitted instruction was necessarily resolved adversely to the defendant. (36 Cal.3d at p. 555, citing *People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913].) Lastly, the *Garcia* court in reliance on *People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256], and *People* v. *Thornton, supra,* 11 Cal.3d 738, noted that reversal would not be required in "cases where the parties recognized that intent to kill was in issue, presented all evidence at their command on that issue, and in which the record not only establishes the necessary intent as a matter of law but shows contrary evidence not worthy of consideration." (36 Cal.3d at p. 556; fn. omitted.)

Concluding that the case before it did not fall within any of the above stated exceptions, the *Garcia* court reversed the jury's finding of felony-murder special circumstance.

In *People* v. *Croy, supra,* 41 Cal.3d 1, the standard of prejudice for *Beeman* error was established. The court in *Croy,* after discussing the four exceptions that it created in *Garcia* for the reversal per se rule for *Carlos* error, stated: "In *Beeman* cases, as in *Carlos* cases, the error consists of failing to instruct the jury that it must find a particular intent in order to find guilt, and to that extent the analysis of prejudice is the same. There is an important difference, however: the instruction condemned in *Beeman,* unlike the pre-*Carlos* special circumstance instructions, did not entirely remove the question of the defendant's mental state from the jury's consideration. Former CALJIC No. 3.01, while containing the flaw discussed in *Beeman,* nonetheless informed the jury that the defendant's state of mind was relevant to the aiding and abetting question, explaining that the defendant must have aided the perpetrator *with knowledge of the perpetrator's unlawful purpose* in order to be found guilty as an aider and abettor.

"This difference justifies an adaptation, in the *Beeman* context, of the *Cantrell-Thornton* exception retained in *Garcia*: the parties at least recognized that the defendant's state of mind was at issue, so that a defendant who only accidentally or unintentionally aided the commission of a crime, or otherwise acted without the requisite intent, had a substantial incentive to place such evidence before the jury, frequently in conjunction with a claim that he had no knowledge of the perpetrator's unlawful purpose. Thus, in many cases there may be no unfairness in assuming—for purposes of appeal and subject to the filing of a petition for writ of habeas corpus containing allegations to the contrary—that the record as made is no different from the record that would have been made had the defendant known that the more precise instruction required by *Beeman* should be given. Since, under former CALJIC No. 3.01, the jury could convict a defendant on an aiding and abetting theory only if it found that he acted with knowledge of the perpetrator's criminal intent, it may be possible in those cases for a court to determine that the *Beeman* error could not possibly have affected the verdict—i.e., that no reasonable trier of fact, having actually found the requisite knowledge, could at the same time have concluded that the defendant did not act for the purpose of facilitating or encouraging the crime. In those cases the judgment could be affirmed." (41 Cal.3d at pp. 13-14, fn. omitted; italics in original.)

In the present case the aiding and abetting instructions related to the criminal offense of attempted murder for which appellant was convicted, and appellant did not concede the issue of intent. Nor was the issue of intent necessarily resolved adversely to appellant under other properly given instructions. Accordingly, if appellant's conviction for attempted murder is to be affirmed, either the *Cantrell-Thornton* exception described in *Garcia*

or the more expanded test promulgated in *Croy* must warrant such action. We conclude that the more expanded test warrants affirmance.

In the present case, the jury was instructed that in order for it to find appellant guilty of attempted murder as an aider and abettor it would have to find that appellant had aided Farrell with knowledge of the latter's unlawful purpose. Implicit in the jury's finding that appellant was guilty of attempted murder is its finding that appellant aided Farrell with knowledge of the latter's unlawful purpose.

Since the parties recognized that appellant's state of mind was at issue, appellant "had a substantial incentive" to place before the jury evidence that he "only accidentally or unintentionally aided the commission of a crime." (*People* v. *Croy, supra,* 41 Cal.3d at p. 14.) He chose not to do so, however, and instead proffered an alibi defense which was rejected by the jury.

Under the facts of this case since we see no unfairness we conclude "that the record as made is not different from the record that would have been made had the defendant known that the more precise instruction required by *Beeman* should be given." (*People* v. *Croy, supra,* 41 Cal.3d at p. 14.) Appellant, who knew that his state of mind was in issue, made the tactical decision to assert an alibi defense and may not now on the state of the record before us use *Beeman* error to obtain a new trial on the attempted murder count.

We conclude that in this case, *Beeman* error could not possibly have affected the jury's verdict finding appellant guilty of attempted murder. The jury, having impliedly found that appellant harbored the required knowledge, could not have concluded that appellant did not act for the purpose of facilitating or encouraging the attempted murder by his repeated urges communicated to Farrell to blow away the victim.

Appellant, in reliance on *Cabana* v. *Bullock* (1986) 474 U.S. — [88 L.Ed.2d 704, 106 S.Ct. 689], contends that the *Cantrell-Thornton* exception formulated in *Garcia* and adopted and expanded in *Croy* was "an ill-conceived venture into appellate fact finding and must be discarded."

In *Garcia,* the court, having concluded that a majority of the United States Supreme Court would "agree that a jury instruction which does take an issue completely from the jury is reversible per se" (36 Cal.3d at p. 554), noted that it was "uncertain whether the United States Supreme Court will endorse the *Cantrell-Thornton* exception to its apparent rule favoring automatic reversal." (36 Cal.3d at p. 556.) Accordingly, it announced that

"pending further guidance from the United States Supreme Court, we will apply the reasoning of *Cantrell* and *Thornton* only to those cases clearly falling within the ambit of that reasoning so as not to detract substantially from the per se character of the high court's rule." (36 Cal.3d at p. 557.)

Appellant contends that *Cabana* v. *Bullock, supra,* provides further guidance and mandates the repudiation of the *Cantrell-Thornton* exception. In *Cabana,* this nation's highest court stated that "a jury's verdict cannot stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof, *Sandstrom* v. *Montana,* 442 US 510 (1979). Findings made by a judge cannot cure deficiencies in the jury's finding as to the guilt or innocence of a defendant resulting from the court's failure to instruct it to find an element of the crime. See *Connecticut* v. *Johnson,* 460 US 73, 95, and n. 3 (1983) . . . ." (*Cabana* v. *Bullock, supra,* 474 U.S. at p. — [88 L.Ed.2d at p. 715].)

Whether or not *Cabana* effectively repudiates the *Cantrell-Thornton* exception as applied to *Carlos* error is a question that is not properly before us. In this case, we are concerned solely with *Beeman* error. In *Croy,* this state's high court noted that "the instruction condemned in *Beeman,* unlike the pre-*Carlos* special circumstance instructions, did not entirely remove the question of the defendant's mental state from the jury's consideration." (41 Cal.3d at p. 13.) In the case before us, we are not concerned with an instruction that completely eliminated the intent element of a crime from the jury.

We therefore conclude that the *Cantrell-Thornton* exception, as applied to *Beeman* error, survives *Cabana.*

## VI-VIII*

. . . . . . . . . . . . . . . . . . . . .

The judgment of conviction as to count I (attempted murder), count II (attempted robbery), and count III (burglary) is affirmed. The judgment of conviction as to count IV (assault with a deadly weapon) is reversed. The matter is remanded for resentencing on counts I and II and for retrial as to

---

*See footnote, *ante,* page 314.

count IV (assault with a deadly weapon) in accordance with the views expressed in this opinion.

Kingsley, Acting P. J., and Rudof, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied September 25, 1987.

---

*Assigned by the Chairperson of the Judicial Council.