[No. F002939. Fifth Dist. Sept. 29, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDALL HERBST et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III, IV-B, IV-C, IV-D, IV-E, V, VI, VII-A and VIII.

**COUNSEL**

Hugh B. Fielder and Frank O. Bell, Jr., State Public Defender, under appointments by the Court of Appeal, Harvey R. Zall, Chief Deputy State Public Defender, and James B. Preston for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Joel Carey and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HANSON (P. D.), Acting P. J.—**

I

Randall Herbst, David Brian Andreas, and Timothy Stephens were convicted of cultivating marijuana (Health & Saf. Code, § 11358) and possession of marijuana for sale (Health & Saf. Code, § 11359). The court stayed

imposition of sentence and granted three years' probation to appellants on condition they each serve 270 days in county jail.

FACTS

As a result of random aerial surveillance by the Tulare County Sheriff's office, three suspected marijuana gardens were located on the 193-acre Thompson parcel, along Balch Park Road. Officers obtained a warrant to search the three marijuana gardens, "any caves, sheds, tents and lean-tos in what appears to be an unoccupied forested area and to include any foot trails and paths leading to and from the marijuana gardens . . . ."

Sheriff's deputies converged on the property to execute the search warrant. They found three cultivated and irrigated marijuana gardens, each with adjacent campsites. The ground was damp from a rain the night before. Footprints leading from the gardens met and continued for about three-quarters to one mile. Officers followed the footprints to a fence with a gate; they saw a mobilehome and trailer inside the fenced area.

Approaching the mobilehome, the officers saw appellants Stephens and Herbst. Herbst had a gun strapped to his waist. The officers identified themselves and told appellants to "freeze." Both appellants ran into the mobilehome. Upon repeated orders by the officers, they came out of the mobilehome unarmed. The bottoms of their pants legs were damp.

When asked if anyone else was in the mobilehome, Stephens replied, "No, you can go inside and look if you want." The officers checked the mobilehome and trailer and found no other suspects. While in the mobilehome, one deputy saw shoes with the same sole pattern as the footprints coming from the marijuana gardens.

As officers searched the gardens and trails to the mobilehome, other officers patrolled Balch Park Road. While parked, they were approached by two citizens and told "they observed a person loitering down the hill in a blue vehicle. He was described as a white male with blond hair, young." After receiving this information, the officers were called to assist at the mobilehome. They stayed approximately 20 minutes, then returned to patrolling the road. The patrolling officers knew three sets of footprints had been found and only two suspects were in custody.

The patrolling officers sought the blue vehicle; failing to find it, they parked near the entrance to the mobilehome. A young blond male in a blue car slowly drove by the residence, looking toward the mobilehome. The

driver spotted the marked patrol car and drove away at "a quick pace." The officers stopped the car.

Appellant Andreas was driving. He stepped out of the car and the officer noted his pants were damp around the ankles; his shoes were damp and muddy. Upon presentation of his driver's license, showing a Visalia address, the officer asked if the address was correct. Andreas said no, he lived down the hill on Balch Park Road. The officer asked if he lived at the address at the mobilehome and described the property; Andreas said yes. When the officer learned he lived at the mobilehome, he placed Andreas under arrest.

The officers that day obtained a second search warrant for the mobilehome, trailer and automobiles. The search produced four walkie-talkies, zip-lock baggies, three Dazey seal-a-meals, counterbalance scales, binoculars, orange and black rope identical to that used in the gardens to support the marijuana plants, a screen similar to one found near one of the gardens, photographs taken in the living room of the mobilehome of a green plastic garbage bag with marijuana buds, a matchbox containing marijuana seeds, boxes for hand sprayers found at the gardens, and, showing the names of appellants, utility and other receipts, a magazine and a military dogtag.

The mailbox at the road by the mobilehome bore Stephens's and Andreas's names. At a booking interview, Herbst gave his address as that of the mobilehome.

### DISCUSSION

### II-III*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV

Both Andreas and Herbst challenge several decisions by the trial court to admit certain pieces of evidence.

A. Herbst first claims, on the basis of *People* v. *Rucker* (1980) 26 Cal.3d 368 [162 Cal.Rptr. 13, 605 P.2d 843], the trial court erred in admitting into evidence appellant's response to a booking interview question, giving his home address as that of the mobilehome located on the Thompson parcel.

---

*See footnote, page 793, *ante*.

In *People* v. *Rucker,* statements elicited at the defendant's "booking" interview without proper *Miranda* warnings were admitted into evidence at defendant's trial for homicide. The court noted the questions asked defendant in that case "far exceeded any legitimate need for information by the jail authorities." (*Id.,* at p. 388.) The court concluded: "Jail officials still retain the right to satisfy a demonstrated need for certain basic information concerning the arrestees in their custody. This need can be accommodated by permitting the state to obtain from an arrestee the basic, neutral information that is necessary for proper jail administration, but forbidding the state from using the arrestee's responses in any manner in a subsequent criminal proceeding. Therefore, *Miranda* warnings need not be given at a booking interrogation, since the information acquired cannot be put to any incriminatory uses. For this reason, evidence of the 'booking' interview with appellant was not admissible on the substantive criminal charges." (*Id.,* at p. 389.) After deciding the trial court erred in admitting the statements, the court determined the error was reversible under the prejudice standard of *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]. (*People* v. *Rucker, supra,* 26 Cal.3d at p. 391.)

Here, the trial court, when admission of the statement was challenged, did not require the prosecution to show whether *Miranda* warnings had been given and waived, believing that if the questions were asked in the normal course of a booking interview the statement was admissible. Appellant's counsel later read into the record part of the booking officer's police report showing: "'Both subjects were contacted and identified as Mr. Herbst and Mr. Stephens. Both declined to give addresses or any other information and were not talked to by us any further.'"

Case law following *Rucker* provides no exception for questions asked in the normal course of a booking interview. The appropriate test appears to be whether the information was incriminating under "all the circumstances." (*People* v. *Rucker, supra,* 26 Cal.3d at p. 389.) Here, one of the arresting officers conducted the booking interview and knew the incriminating nature of an admission by Herbst that he lived in the mobilehome. While, under *Rucker,* Herbst could not impede the booking process by refusing to give his address to authorities, he could expect such information would not be used against him at trial.

The trial court's admission of Herbst's response to the booking interview question thus appears to violate the proscription announced in *Rucker.* ■ Respondent argues that passage of Proposition 8, specifically article I, section 28, subdivision (d), of the California Constitution, over-

ruled *Rucker* and the trial court did not err.[2] "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, . . . *Nothing in this section shall affect any existing statutory rule of evidence relating to privilege* or hearsay, or Evidence Code, Sections 352, 782 or 1103." (Italics added.)

"Evidence Code section 940 is an 'existing statutory rule of evidence relating to privilege' within the meaning of California Constitution, article I, section 28, subdivision (d)." (*People* v. *Jacobs* (1984) 158 Cal.App.3d 740, 750 [204 Cal.Rptr. 849].)

Evidence Code section 940 provides: "To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him." Evidence Code, section 940 "is meant to include within its reach judicial decisions relating to the privilege against self-incrimination. The Law Revision Commission comment to section 940 declares that 'Section 940 does not determine the scope of the privilege against self-incrimination; the scope of the privilege is determined by the pertinent provisions of the California and United States Constitutions as interpreted by the courts.'" (*Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802, 808 [210 Cal.Rptr. 204, 693 P.2d 789].)[3] Therefore, if the exclusion of the booking statements announced in *Rucker* is mandated by the California Constitution, the rule falls within the privilege exception to the operation of subdivision (d) and remains good law. (*Ibid.*; see also *People* v. *Barrios* (1985) 166 Cal.App.3d 732 [212 Cal.Rptr. 644].)

Under the facts in *Rucker,* as pointed out by Justice Richardson in his concurrence and dissent, the case could have been resolved by finding

---

[2]The federal courts reject appellant's claim. In *United States* v. *Sims* (11th Cir. 1983) 719 F.2d 375, 378-379, the court held admissible defendant's statement of his telephone number, derived from a normal booking interview, introduced to link him to an incriminating conversation had by a government agent who had called defendant's phone number. The court depended upon a series of federal cases, some predating the *Rucker* decision, which hold answers to routine booking questions need not be preceded by *Miranda* warnings to be admissible at trial. (See *United States* ex rel. *Hines* v. *La Vallee* (2d Cir. 1975) 521 F.2d 1109, 1113.)

[3]In *People* v. *Weaver* (1985) 39 Cal.3d 654, 660 [217 Cal.Rptr. 245, 703 P.2d 1139], the California Supreme Court held the use immunity afforded defendants for testimony at probation revocation hearings, first announced in *People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024], survived the passage of Proposition 8. Depending upon the holding in *Ramona R.*, where the use immunity in question was derived from *Coleman*, the *Weaver* court stated: "In other words, *Coleman*'s exclusionary rule may be deemed a 'statutory' rule because the self-incrimination statute itself (Evid. Code, § 940) merely adopts existing judicial decisions relating to the privilege." (*Weaver, supra,* at p. 659.)

the questions asked at the defendant's "booking interview" far exceeded the proper scope of a booking interview and therefore such statements were inadmissible absent proper *Miranda* warnings. (See *People* v. *Rucker, supra,* 26 Cal.3d at p. 393, Richardson, J., conc. and dis. opn.) Justice Richardson in evaluating this error would have applied the *Chapman* standard of review. (*Id.,* at p. 394.) Adoption of the *Watson* standard of review by the majority, after announcing the broad rule of exclusion, suggests the broad rule was not constitutionally mandated, but administratively expedient. Errors of constitutional dimension, as pointed out by Justice Richardson, should be reviewed, at the least, under the *Chapman* standard. Based solely upon the standard of review used by the majority, it appears the *Rucker* rule is not one mandated by the California Constitution. As such it would not be preserved by Evidence Code section 940 in the face of passage of Proposition 8.

Even assuming the *Rucker* rule survives Proposition 8, and admission of the officers' testimony about appellant giving his address was error, it was harmless under the *Watson* test (*People* v. *Watson, supra,* 46 Cal.2d 818). (*People* v. *Rucker, supra,* 26 Cal.3d at p. 391.) Herbst was found by the officers at the mobilehome when they followed the trails from the marijuana gardens; he ran inside the mobilehome when officers first announced themselves; upon the subsequent search of the mobilehome, the officers found a magazine addressed to Herbst at the mobilehome. When the officers seized the boots appellant wore, he asked them to fetch him another pair of shoes out of the smaller trailer.

B.-E.*

. . . . . . . . . . . . . . . . . . . . . . . .

V-VI*

. . . . . . . . . . . . . . . . . . . . . . . .

VII

Appellants also complain the trial court erroneously instructed the jury.

A.*

. . . . . . . . . . . . . . . . . . . . . . . .

B. Appellants also claim, and the People concede, the trial court erroneously instructed the jury under CALJIC No. 3.01 as to the criminal

---

*See footnote, page 793, *ante.*

intent required to convict appellants as aiders and abettors of the crimes. (*People* v. *Beeman* (1984) 35 Cal.3d 547, 551 [199 Cal.Rptr. 60, 674 P.2d 1318].)[6] Such error is reversible unless the instruction was given in connection with an offense of which the defendant was acquitted and the instruction had no bearing on the offense of which he was convicted; the defendant conceded the issue of intent; the question of intent was necessarily resolved adversely to the defendant under other properly given instructions; or, finally, no reasonable jury, having found the requisite knowledge, could have concluded that the defendant did not act for the purpose of facilitating or encouraging the crime. (*People* v. *Croy* (1985) 41 Cal.3d 1, 13-14 [221 Cal.Rptr. 592, 710 P.2d 392].) ■ We must determine whether the error here falls into one of the exceptions to the general rule of reversibility.[7]

■ Appellant Stephens argues the final exception to the reversibility rule, known as the *Cantrell-Thornton* exception (*People* v. *Croy, supra,* 41 Cal.3d at p. 14), violates the federal due process clause by consigning to the appellate court the task of factfinding of an essential element of the crime. (See *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267], dis. opn. by Mosk, J., and *People* v. *Garcia* (1984) 36 Cal.3d 539, 556 [205 Cal.Rptr. 265, 684 P.2d 826], and conc. and dis. opn. by Bird, C. J.) He claims a recent decision by the United States Supreme Court, *Cabana* v. *Bullock* (1986) 474 U.S. 376 [88 L.Ed.2d 704, 106 S.Ct. 689], disapproves this sort of factfinding.

In *Cabana,* the Supreme Court reviewed a claim by a condemned murderer that the death penalty was imposed without a finding being made that he killed, attempted to kill, or intended that a killing take place as required in *Enmund* v. *Florida* (1982) 458 U.S. 782, 797 [73 L.Ed.2d 1140, 1151, 102 S.Ct. 3368]. The court found the defendant's claim meritorious but held that, for penalty phase purposes, such factfinding could be made by a

---

[6]The jury was instructed: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime. [¶] Mere presence at the scene of a crime which does not itself assist the commission of a crime does not amount to aiding and abetting. [¶] Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting."

[7]The case was tried under a theory that the gardens were the cooperative product of the labor of all three appellants. The closing argument of the district attorney highlights this— she carefully explained the elements of each offense and discussed the evidence against each appellant in light of the elements. She never suggested that one or two of appellants were more active or culpable while one or two of them merely aided or abetted. The instruction under CALJIC No. 3.01 appears superfluous. However, the instruction was given and as "the jury theoretically could have reached its verdict on an aiding and abetting theory, we must determine whether the error calls for reversal." (*People* v. *Leach* (1985) 41 Cal.3d 92, 104 [221 Cal.Rptr. 826, 710 P.2d 893].)

reviewing court. (474 U.S. at pp. 385-386 [88 L.Ed.2d at pp. 715-716, 106 S.Ct. at pp. 696-697].) The court distinguished between findings necessary to determine guilt and to impose punishment. As to the former, the court stated: "A defendant charged with a serious crime has the right to have a jury determine his guilt or innocence, *Duncan* v. *Louisiana,* 391 U.S. 145 (1968), and a jury's verdict cannot stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof, *Sandstrom* v. *Montana,* 442 U.S. 510 (1979). Findings made by a judge cannot cure deficiencies in the jury's finding as to the guilt or innocence of a defendant resulting from the court's failure to instruct it to find an element of the crime." (*Id.,* at pp. 384-385 [88 L.Ed.2d at p. 715, 106 S.Ct. at p. 696].)

*Beeman* error does "not entirely remove the question of the defendant's mental state from the jury's consideration." (*People* v. *Croy, supra,* 41 Cal.3d at p. 13; see *People* v. *Johnson* (1986) 183 Cal.App.3d 314 [227 Cal.Rptr. 917].) As *Beeman* error does not completely eliminate the intent element of crime from consideration of a jury, the *Cantrell-Thornton* exception remains viable even in light of *Cabana.*

This interpretation is reinforced by an even more recent decision of the United States Supreme Court, *Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101]. In *Rose* v. *Clark,* the court held that an instruction eliminating or shifting the burden of proof to a defendant on the issue of malice in a murder trial was infected with *Sandstrom* error, like *Beeman* (*id.,* at p. 570, [92 L.Ed.2d at pp. 469-470, 106 S.Ct. at p. 3105]), and could be reviewed under the harmless error standard announced in *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. (*Rose* v. *Clark, supra,* 478 U.S. at p. 570 [92 L.Ed.2d at p. 474, 106 S.Ct. at p. 3109].) Indeed, the instructional errors in *Rose* and *Beeman* appear indistinguishable for purposes of analyses. Absent the California Supreme Court's clear direction in *Croy* as to the applicable standard of review (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), *Rose* indicates a review of the error under *Chapman.*[8]

---

[8]We find the standard of review enunciated in *Croy* and *Garcia* was based upon the California Supreme Court's reading of the federal due process clause, interpreting *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969] and *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450]. *Rose* v. *Clark* has rejected such an interpretation. In *Garcia,* the court stated: "To avoid possible misunderstanding, we reiterate that we decide the present case on the basis of federal precedent. We take no position on whether, in the absence of controlling federal authority, we would apply the California prejudicial per se test of *Modesto* or some other, less stringent, test." (36 Cal.3d at p. 555, fn. 10.) In effect, *Rose* supersedes *Croy* and we should apply the *Chapman* test to *Beeman* error.

Applying the *Cantrell-Thornton* exception to the facts in this case—whether having found the requisite knowledge, the jury could have concluded appellants did not act for the purpose of facilitating or encouraging the crimes—the verdicts appear sustainable on appeal.

While circumstantial, the evidence points to joint and active participation of all three appellants. The three campsites, next to the three gardens, each possessed accommodations for one. The authorities found fresh footprints in the damp ground leading from each campsite to the mobilehome. Testimony at trial established each appellant had damp cuffs the morning of the arrests. Three Dazey seal-a-meals and two sets of walkie-talkies again point to a joint endeavor by all appellants. In his bedroom, Stephens had photographs of marijuana strewn about the mobilehome living room. Herbst had a gun and holster when first spotted by the authorities. Marijuana seeds were found in the bedroom occupied by Andreas.

VIII*

. . . . . . . . . . . . . . . . . . . . . . . .

The judgments are affirmed.

Woolpert, J., and Best, J., concurred.

A petition for a rehearing was denied October 28, 1986, and the petitions of appellants Andreas and Stephens for review by the Supreme Court were denied January 15, 1987.

---

*See footnote, page 793, *ante*.